[No. 31778-4-I.   Division One.   November 7, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. ERIC L. CLARK, *Appellant*.

152

*Neal J. Philip* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *James Morissey Whisman* and *Rian Kazuo Ebesugawa, Deputies,* for respondent.

GROSSE, J. — Eric L. Clark appeals his conviction of one count of delivery of cocaine in a school zone. He contends the trial court erred by denying his motion to suppress the evidence obtained from the interception and recording of conversations between him and an undercover cooperating witness. He claims the recordings violated Washington's privacy act, RCW 9.73 (hereinafter Privacy Act), and his rights under Const. art. 1, § 7. He also contends the exclusion of persons convicted of delivering cocaine from the definition of first-time offender violates his rights under the federal equal protection clause and the State's privileges and immunities clause because persons convicted of delivering methamphetamine are not excluded. The State cross-appeals, contending the trial court erred by imposing an exceptional sentence below the standard range on the ground that Clark was addicted to drugs and needed long-term residential treatment. We affirm the conviction and remand for resentencing within the standard range.

## FACTS

Clark was arrested during Operation Hardfall, an undercover narcotics investigation conducted jointly by the Federal Bureau of Investigation (FBI) and the Seattle Police

Department (SPD). The SPD applied for and was granted authorization to record conversations between Kevin Glass, a cooperating witness, and various unidentified persons who engaged in drug transactions with Glass. Details as to Operation Hardfall, the contents of the SPD's application for authorization to record, and the court's authorization are set forth in *State v. D.J.W.*, 76 Wn. App. 135, 882 P.2d 1199 (1994).[1]

Clark's conversation with Glass was recorded on audio and videotape and, as a result of the recording, Clark was charged with delivery of cocaine. He moved to suppress the evidence obtained through the recording, and the court denied his motion. Clark was found guilty as charged, his first felony conviction.

Clark was ineligible for the first-time offender waiver contained in RCW 9.94A.120(5) because persons convicted of selling cocaine, a narcotic drug listed in schedule II (RCW 69.50.206), are excluded from the definition of first-time offender in RCW 9.94A.030(20). Clark moved to dismiss his case on the ground that the distinction between narcotic and nonnarcotic drugs and the exclusion of the former from the first-time offender waiver provisions violate the equal protection clause of the federal constitution and the privileges and immunities clause of our state constitution. The trial court rejected his argument and denied his motion to dismiss. Clark was sentenced below the standard range, upon the trial court's finding that Clark was addicted to cocaine

---

[1]In *State v. D.J.W., supra*, this court held that the conversations were not private and were therefore outside the purview of the Privacy Act, such that recording them could not have violated the act. Further, assuming the conversations were private, reversal is not required because the application and authorization to record complied with the requirements of the Privacy Act. We also held that the recordings did not deprive the Appellants of their rights under Const. art. 1, § 7 because there is no reasonable expectation of privacy in a conversation where, as here, one party consents to the recording of the conversation. For the reasons set forth in *State v. D.J.W., supra*, we reject Clark's arguments concerning the denial of his motion to suppress the evidence obtained through the recording of his conversations with the cooperating witness during Operation Hardfall.

and marijuana and was amenable to long-term residential treatment.

## First-Time Offender Waiver

The first-time offender waiver (FTOW) provision of the Sentencing Reform Act of 1981 (SRA) permits a court, in sentencing a first-time offender, to waive the imposition of a sentence within the standard range "and impose a sentence which may include up to ninety days of confinement in a facility operated or utilized under contract by the county and a requirement that the offender refrain from committing new offenses." RCW 9.94A.120(5). The sentence may include up to 2 years of community supervision and requirements that the offender perform any one or more of six enumerated items. RCW 9.94A.120(5).

Clark's argument focuses on the SRA's definition of "first-time offender":

> any person who is convicted of a felony (i) not classified as a violent offense or a sex offense under this chapter, or (ii) that is not the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance classified in schedule I or II that is a narcotic drug . . . who previously has never been convicted of a felony in this state, federal court, or another state, and who has never participated in a program of deferred prosecution for a felony offense.

RCW 9.94A.030(20)(a).

Clark contends the exclusion of persons convicted of manufacturing, delivering, or possessing with intent to manufacture or deliver a narcotic drug classified in schedule I or II from the definition of first-time offender violates the federal equal protection clause and the privileges and immunities clause of Washington's constitution because persons convicted of the same offenses not involving a narcotic drug classified in schedule I or II can avail themselves of the FTOW provision.

Clark first claims the state constitutional privileges and immunities clause, Const. art. 1, § 12,[2] confers broader pro-

---

[2]"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

tection than the federal equal protection clause, U.S. Const. amend. 14.[3] Citing *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), he contends the FTOW provision should be separately analyzed under the state and federal provisions.

The Supreme Court has repeatedly rejected the contention that Const. art. 1, § 12 should be independently interpreted and has consistently held "that the privileges and immunities clause and the equal protection clause are substantially identical and considered by this court as one issue." (Footnote omitted.) *State v. Smith*, 117 Wn.2d 263, 281, 814 P.2d 652 (1991) (collecting cases); *see also State v. Shawn P.*, 122 Wn.2d 553, 559-60, 859 P.2d 1220 (1993); *State v. Entz*, 58 Wn. App. 112, 119-20, 791 P.2d 269, *review denied*, 115 Wn.2d 1019 (1990). Accordingly, we decline to independently analyze Clark's contentions under Const. art. 1, § 12, and will consider both of his constitutional claims as one issue.

The federal equal protection clause requires similar treatment for persons similarly situated. *State v. Shawn P.*, 122 Wn.2d at 559-60. The first step in an equal protection analysis is to determine the appropriate standard of review: strict scrutiny, intermediate scrutiny, or the rational basis test.

> Under the rational relationship test, the law being challenged must rest upon a legitimate state objective, and the law must not be wholly irrelevant to achieving that objective. *State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992). The other test is strict scrutiny, under which the State's purpose must be compelling and the law must be necessary to accomplish that purpose. *Coria*, at 169. Strict scrutiny applies " 'if an allegedly discriminatory statutory classification affects a suspect class or a fundamental right.' " *Coria*, at 169 (quoting *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987)).

*State v. Ward*, 123 Wn.2d 488, 516, 869 P.2d 1062 (1994).

Intermediate scrutiny is applied "where strict scrutiny is not mandated, but where important rights or semi-suspect

---

[3]"No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."

classifications are affected." (Footnote omitted.) *State v. Shawn P.*, 122 Wn.2d at 560. To withstand intermediate scrutiny, the challenged statute must further a substantial interest of the State. *State v. Coria*, 120 Wn.2d 156, 170, 839 P.2d 890 (1992).

While acknowledging that liberty interests alone are not sufficient to subject a statute to strict scrutiny, *State v. Ward*, 123 Wn.2d at 516, Clark contends intermediate scrutiny should be applied because a liberty interest is an "important" right and because operation of the FTOW provisions has a disparate impact on blacks.[4] He argues that persons convicted of delivering cocaine, to whom the FTOW provisions are not available, are generally black, and those convicted of delivering methamphetamine, to whom the FTOW provisions are available, are generally white.

■■ Assuming, without deciding, that the FTOW provisions do have a disparate impact on minorities and intermediate scrutiny is the appropriate standard of review, we hold that the FTOW provisions do not violate the equal protection clause.

First, a statistical showing of disparate impact on minorities, without more, fails to establish an equal protection violation. *State v. Coria*, 120 Wn.2d at 174-75. " 'It is well established that a showing of discriminatory intent or purpose is required to establish a valid equal protection claim.' " *State v. Coria*, 120 Wn.2d at 175 (quoting *United States v. Crew*, 916 F.2d 980, 984 (5th Cir. 1990)). Clark has failed to demonstrate that the FTOW provisions are based on a discriminatory intent or purpose, nor can we discern any evidence of such intent or purpose.

Moreover, we find that the FTOW provisions withstand intermediate scrutiny because they further a substantial interest of the State. The prevalence in today's society of the illegal use of the narcotic drugs classified in schedules I and II, to a much greater degree than the use of other controlled

---

[4]Intermediate scrutiny is not proper where the *sole* basis for the equal protection challenge is that physical liberty is implicated. *State v. Coria*, 120 Wn.2d at 171.

substances, is an undeniable fact, as are the harmful and often tragic results of the rampant use and widespread availability of these drugs. The State has a substantial interest in addressing the problems created by the illegal use, manufacture, and sale of these classified narcotic drugs and in enforcing its laws with respect to them. Exempting narcotics dealers from the FTOW provisions, thereby attempting to deter persons from violating the laws with respect to these controlled substances, is a reasonable means of serving this interest.

The denial of first-time offender status to narcotics dealers is consistent with the harsher maximum penalties prescribed for persons convicted of manufacturing, delivering, or possessing a controlled substance classified in schedule I or II which is a narcotic drug, relative to those for persons convicted of the same offenses with respect to any other controlled substance classified in schedule I or II. RCW 69.50.401(a)(1)(i) and (ii) (prescribing a maximum penalty for the former offenses of 10 years and a $25,000 fine, and a maximum penalty for the latter of 5 years and a $10,000 fine). The harsher maximum penalties and the denial of first-time offender status are reasonable means of serving the State's important interests with respect to controlling the use, manufacture, and sale of narcotic drugs classified in schedules I and II.

We hold that under the intermediate scrutiny test, the FTOW provisions do not violate the federal equal protection clause because they further a substantial interest of the State. Consequently, the FTOW provisions are also valid under our State's privileges and immunities clause.

### Exceptional Sentence

Clark was convicted of delivery of cocaine. The offense was committed in a school zone. Clark had an offender score of 0 at the time of conviction and sentencing. The standard range was 21 to 27 months without the school zone enhancement, and 45 to 51 months with the enhancement. The trial court imposed an exceptional sentence of 12 months, plus 24

months of community supervision and 15 months in a residential drug treatment program. The trial court departed from the standard range because it found that Clark was addicted to cocaine and marijuana and was amenable to long-term residential treatment. The court found that without treatment Clark was likely to reoffend, and that a standard range sentence would not permit Clark to obtain treatment and improve himself as would the exceptional sentence imposed.

As Clark concedes, the Supreme Court has held "that drug addiction and its causal role in an addict's criminal offense may not properly serve as justification for a durational departure from the standard range." *State v. Gaines*, 122 Wn.2d 502, 512, 859 P.2d 36 (1993). The trial court's reasons for the exceptional sentence in the instant case were very similar to those given in *Gaines*, and as a matter of law, are inadequate.

Clark contends that, notwithstanding the inadequacy of the reasons as a matter of law, the exceptional sentence should be affirmed because the State failed to file a verbatim report of the sentencing hearing. This failure, he claims, has rendered the record insufficient for appellate review of whether the court's findings and conclusions accurately reflect all the reasons upon which the court relied, and whether the State objected to the exceptional sentence at the hearing. We disagree.

First, we note that after the parties' appellate briefs were filed, the State filed a supplemental verbatim report of the sentencing proceedings which shows that the State did object to the exceptional sentence below on grounds of the inadequacy of the trial court's reasons under *Gaines*. We do not condone the State's delay in filing the Report of Proceedings. However as discussed below, the issue could have been raised for the first time on appeal and whether the State objected below is not dispositive.

"[W]hen a sentencing court acts without statutory authority in imposing a sentence, that error can be addressed for the first time on appeal." *State v. Paine*, 69

Wn. App. 873, 884, 850 P.2d 1369, *review denied*, 122 Wn.2d 1024 (1993).

A justification for the rule is that it tends to bring sentences in conformity and compliance with existing sentencing statutes and avoids permitting widely varying sentences to stand for no reason other than the failure of counsel to register a proper objection in the trial court.

*State v. Paine*, 69 Wn. App. at 884.

We agree with the court's reasoning in *Paine* and hold that, regardless of whether the State objected below, the trial court's error in imposing an exceptional sentence because of Clark's drug addition may be addressed for the first time on appeal. As stated, under *Gaines*, the findings of fact in support of Clark's exceptional sentence were inadequate as a matter of law. The exceptional sentence was error.

Clark's conviction is affirmed and the matter is remanded for resentencing within the standard range.

BAKER, A.C.J., and AGID, J., concur.

Review granted at 126 Wn.2d 1007 (1995).