IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35663-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL EDWARD ELMORE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Michael Elmore appeals the trial court's denial of his

postconviction petition to modify his judgment and sentence and to remit outstanding

legal financial obligations (LFOs). He argues the trial court erred by not modifying his

LFO balance because of a perceived inaccuracy in the LFO balance. In his statement of

additional grounds for review, he argues the trial court erred when it refused to remit his

LFOs. Finding no error, we affirm.

FACTS

On December 14, 2007, Michael Elmore was convicted of killing a fellow inmate.

The court sentenced him to 280 months of confinement. In addition, the court imposed

the following LFOs: $56,843.91 in restitution to the Department of Corrections (DOC)

medical unit, $200.00 in court costs, $250.00 in jury demand fees, $492.20 in sheriff and

booking fees, $500.00 for victim assessment, $775.00 for his court-appointed attorney,

$100.00 for a crime laboratory fee, and a $100.00 deoxyribonucleic acid (DNA)

collection fee.  Following an unsuccessful appeal, $3,570.91 in appellate costs were

added to his LFOs.  Interest at 12 percent per year on his LFOs also has accrued.  His

current balance exceeds $133,000.00.

More than eight years after his unsuccessful appeal, Mr. Elmore filed a petition

with the trial court to modify his judgment and sentence and to remit his LFOs.  In his

request to modify, he argued that the sentencing court did not make an individualized

inquiry into his current and likely future ability to pay.  In his request to remit, he asked

the trial court to waive or terminate his LFOs because of a severe financial hardship.

In addition, he requested the trial court to modify his LFO balance because the

DOC was double charging him.  Mr. Elmore submitted two documents in support of this

request.  The first is a letter purportedly from the Walla Walla County Clerk on April 16,

2017.  This letter shows that the clerk's office applied *$54.58* to his LFO account, and a

total balance owing of $133,075.00.  The second document is a monthly financial

statement from his inmate trust account dated September 22, 2017.  This statement shows

total payments of *$290.79* toward a "restitution debt" with a reference number of

2

05292007, and a total balance owing of $27,637.19. Clerk's Papers (CP) at 81. We presume he believes the $54.58 figure should be corrected to show he has paid $290.79 in restitution. The trial court denied his petition.

Mr. Elmore appealed.

## ANALYSIS

Mr. Elmore argues the trial court erred in not modifying the restitution amount in light of the inconsistency between the two documents. We disagree.

The record is insufficient to establish an inconsistency between the two documents. First, there is more than five months between what the clerk's office reported had been paid, $54.58, and what Mr. Elmore's trust account shows had been paid, $290.79. Perhaps approximately $50 per month for five months was withdrawn from Mr. Elmore's inmate trust account. If so, the documentation is consistent.

Second, the record shows that Mr. Elmore has numerous criminal convictions. It is possible that the documents do not refer to the same restitution obligation. We note that the documents show a much different amount owing. The first document shows an amount owing of $133,075.00, and the second document shows an amount owing of $27,637.19. We see no error.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

Mr. Elmore has filed an SAG. In his SAG, he argues the trial court erred when it denied his petition because the LFO debt constitutes a severe financial hardship. He argues the debt will increase to around $800,000 by the time he is released, he will be over 50 years of age at that time, and that he will only be able to work at a minimum wage job at the time of his release. In essence, he will never be able to pay the LFO debt. He requests that we remand and direct the trial court to fully remit all of his LFOs.

The trial court did not err when it denied Mr. Elmore's remission request. The Washington Supreme Court has stated the correct time to consider an individual's economic circumstances is when the State begins collecting LFOs. *State v. Blank*, 131 Wn.2d 230, 241-42, 930 P.2d 1213 (1997); *State v. Wilson*, 198 Wn. App. 632, 635, 393 P.3d 892 (2017). Mandatory deductions by the DOC are not considered a collection action. *Wilson*, 198 Wn. App. at 635. Historically, remission petitions for LFOs were not ripe for review until the inmate was out of custody and collection began; until then, the inmate is not an aggrieved party. *Id.*; *see State v. Mahone*, 98 Wn. App. 342, 348, 989 P.2d 583 (1999).

LFOs were examined extensively in *State v. Blazina*, and the court recognized that LFOs could impose other hardships outside the financial realm. 182 Wn.2d 827, 837, 344

4

P.3d 680 (2015). Division Two of this court considered *Blazina*'s impact on remission petitions of LFOs by inmates. *See State v. Shirts*, 195 Wn. App. 849, 856-57, 381 P.3d 1223 (2016). The court in *Shirts* recognized that LFOs can have other collateral impacts on offenders that make them "aggrieved" even before collection begins. *Id.* (finding the defendant was aggrieved before release because he was "denied access to transitional classes and classification advances in DOC due to his outstanding LFOs").

Division Three adopted this view in *Wilson*, but still denied review of the defendant's motion for remission because the defendant did not allege any noneconomic hardships. *Wilson*, 198 Wn. App. at 636-37. This court remained bound by the rule that "a manifest hardship analysis is not ripe for review until after the State initiates collection." *Id.* Because the sole basis for Mr. Elmore's motion was that his LFOs impose a significant financial hardship, his request is not ripe for review.[1]

---

[1] After *Wilson* and *Shirts*, the legislature modified RCW 10.01.160(4), the statute that *Wilson* and *Shirts* construed. The pertinent statutory language now reads: "A defendant . . . may at any time *after release from total confinement* petition the sentencing court for remission of the payment of costs or of any unpaid portion thereof." ENGROSSED SECOND SUBSTITUTE HOUSE BILL 1783, 65th Leg., Reg. Sess. (Wash. 2018), effective June 7, 2018 (emphasis added). This new language has not been interpreted by

No. 35663-9-III
*State v. Elmore*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

WE CONCUR:

_Korsmo, J._
Korsmo, J.

_Pennell, J._
Pennell, J.

---

this court, but it may suggest that all petitions, regardless of whether they allege economic harm or noneconomic harm, must be filed after release.